UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH (973) 645-4693
BANKRUPTCY JUDGE Fax: (973) 645-2606

**NOT FOR PUBLICATION**

Norris, McLaughlin & Marcus
Robert L. Schmidt, Esq.
721 Route 202-206
P.O. Box 1018
Somerville, New Jersey  08876-1018
*Counsel for Debtor/Defendant*

**FILED**
JAMES J. WALDRON, CLERK
**APRIL 20, 2006**
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY

Steven A. Hershkowitz, Esq.
317 Belleville Avenue
Bloomfield, New Jersey  07003
*Counsel for Plaintiff*

Forman Holt & Eliades LLC
Harry M. Gutfleish, Esq.
218 Route 17 North
Rochelle Park, New Jersey  07662
*Counsel for Catherine E. Youngman, Chapter 7 Trustee*

Catherine E. Youngman, Esq.
Feitlin, Youngman, Karas & Youngman
9-10 Saddle River Road
Fair Lawn, New Jersey  07410
*Chapter 7 Trustee*

   **Re:** **In re Karen F. DeSoto**
      **Case No. 05-29744 (DHS)**

Page 2
April 20, 2006

Dear Counsel:

Before the Court is a motion filed by Anthony Scaffidi (hereinafter "Scaffidi") seeking to dismiss the bankruptcy petition filed by the Debtor, Karen DeSoto (hereinafter the "Debtor"). In the alternative, Scaffidi requests that the automatic stay be lifted so as to enable the parties to continue litigation in the Superior Court of New Jersey. For the reasons that follow, the request to dismiss the Debtor's bankruptcy petition is denied, but the Court will lift the automatic stay so that the parties can litigate Scaffidi's claims against the Debtor to finality.

The motion papers exchanged between the parties and submitted to the Court unfortunately contain a host of unsubstantiated allegations and myriad "he said, she said" statements of fact with respect to the underlying state court litigation. For purposes of deciding this motion, however, the thicket of accusations can be best summarized as follows. Scaffidi filed a complaint against the Debtor, an attorney and former paramour of Scaffidi, alleging causes of action for fraud, unjust enrichment, larceny and legal malpractice. (*See Certification of Christina M. Thomas*, ¶ 2) (hereinafter "*Thomas Cert.*"). As Scaffidi contends:

> As set forth in the first state court Complaint, one of the allegations against the Debtor was that, by purporting to give him legal advice as his attorney, the Debtor induced Scaffidi to entrust to her his assets, including his rights in a contract to purchase real estate, after which the Debtor unlawfully and improperly claimed those assets as her own. That is, after convincing Scaffidi that she must hold all of his assets in a constructive trust for him - to "protect" them for Scaffidi's benefit - the Debtor stole those assets. With respect to Scaffidi's rights in the said contract to purchase real property, the Debtor misappropriated Scaffidi's assets and used them to complete the purchase of the property, and then proceeded to take title to the property in her own name; (the "Tewksbury property"). Once Scaffidi realized the Debtor had begun to claim as her own those assets which Scaffidi had entrusted to her as his fiduciary, Scaffidi commenced the first state court action against the

Page 3
April 20, 2006

> Debtor, *inter alia*, wherein he justly claimed that he had constructive ownership of the Tewksbury property.
>
> (*Thomas Cert.*, ¶¶ 7-10)].[1]

In June of 2005, the jury trial in the state court action began. Shortly after the commencement of the state court trial, however, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code on June 14, 2005. In support of his application to have the bankruptcy petition dismissed as a "bad faith" filing, Scaffidi "argues that the instant petition was filed solely to avoid the impending adverse consequences to the Debtor which she clearly knew she was about to suffer at trial." (*See Memorandum of Law in Opposition to the Debtor/Defendant's Motion to Dismiss the Adversary Complaint, and in Support of the Plaintiff's Cross-motion to Dismiss the Petition, or, in the Alternative, for Relief from the Automatic Stay*, pg. 6) (hereinafter "*Scaffidi Br.*"). In further support of his motion to dismiss the Debtor's bankruptcy petition, Scaffidi submits the following:

> As the proofs at trial *would* have established, the Debtor committed these torts/crimes while acting as Scaffidi's attorney. As [the state court judge] noted from his review of the certifications, Scaffidi's allegations encompassed the charges that, after he had put the Debtor through law school, and after she became an attorney, the Debtor manipulated and defrauded Scaffidi into entrusting his assets to the Debtor by purporting to give Scaffidi legal advice, even though, Scaffidi has alleged, at all times it was the Debtor's intention to retain these assets for herself, and thereby to deprive Scaffidi of possession and/or of the benefit of possession.

---

[1] There are also allegations that the Debtor fraudulently induced Scaffidi to "sign over" his interests to her in other assets, such as a restaurant and automobiles, and in turn the Debtor conveyed those assets to her husband.

Page 4
April 20, 2006

> While claiming to be acting in Scaffidi's best interest, the Debtor advised him to entrust his assets to her so that they wold [sic] be out of reach of his creditors or of the government. She bolstered this advice by suggesting that she could sustain the transfer as legitimate because they could be considered common law husband and wife. *Knowing that she could not withstand Scaffidi's proofs on any of his causes of action, after testimony had begun at trial, the Debtor ran to file her Petition.*
>
> [(*Scaffidi Br.*, pgs. 8-9) (emphases added)].

In short, the gravamen of Scaffidi's request to have the Court dismiss the Debtor's bankruptcy petition is premised upon the *timing* of the bankruptcy filing; that is, in the midst of a trial in which Scaffidi alleges the Debtor expected to receive an unfavorable ruling.

In opposing the motion to dismiss her bankruptcy petition, the Debtor denies the substantive allegations raised by Scaffidi in the state court action, and alleges facts that paint a different picture of the parties' underlying conduct; for example, the Debtor claims that the disputed "Tewksbury property" was purchased by her through a loan "solely" in her name, and the Debtor "did not claim [Scaffidi's] assets as [her] own." (*See Debtor's Certification in Opposition to Motion by Anthony Scaffidi to Dismiss the Bankruptcy Petition, or Alternatively, for Relief from the Automatic Stay*, ¶ 7) (hereinafter "*Debtor's Cert.*"). The Debtor further notes that "[t]here were never any conclusory findings of fraudulent conduct on my part." (*Debtor's Cert.*, ¶ 7). But critical to the present motion is the Debtor's explanation regarding her decision to file for bankruptcy protection:

> The bankruptcy application was not made in bad faith. The cost of defending against these baseless allegations was staggering. My career and reputation were also suffering as a result of the publicity surrounding the trial. Ms.

Page 5
April 20, 2006

> Thomas[2] and Mr. Scaffidi complicated matters by making defamatory statements to the press. Due to those knowingly false statements made by Christina Thomas and Mr. Scaffidi, I have been harmed beyond compensation. It is shameful what Ms. Thomas and Mr. Scaffidi have done in order to seek his revenge for a relationship that he caused to go awry.
>
> [(*Debtor's Cert.*, ¶ 11)].

Moreover, in her brief opposing the motion to dismiss the bankruptcy petition, the Debtor submits the following explanation:

> Examining the totality of circumstances and drawing inferences in favor of the debtor, the instant case simply does not constitute a bad faith filing. The cost of defending the lawsuit was well beyond the Debtor's means. With no full-time income, the Debtor simply could not afford the exponential increase in attorney fees in the advent of trial. Therefore, the Debtor filed a bankruptcy petition. The petition fully disclosed the Debtor's financial affairs.
>
> [(*See Memorandum of Law in Opposition to Motion by Anthony Scaffidi to Dismiss Debtor's Petition, or Alternatively, for Relief from Automatic Stay*, pg. 4) (hereinafter "*Debtor's Br.*")].[3]

Section 707(a) of the Bankruptcy Code permits a court to dismiss a bankruptcy case, after notice and a hearing, for "cause." *See* 11 U.S.C. § 707(a) (West 2006). The Bankruptcy Code does not define the phrase "for cause." However, "cause" for purposes of § 707(a) includes a debtor's lack of "good faith" (or

---

[2] Christina Thomas is Scaffidi's legal counsel.

[3] The Debtor also provides the following: "The Debtor's conduct, including conduct surrounding the Tewksbury property and the Bedminster property, has been subject to the Trustee's scrutiny. The trustee has thoroughly investigated the conduct complained of by Scaffidi in state court and complained of by Scaffidi in the instant motion. After more than six months of investigation, the trustee has not raised any grounds for dismissal of the case or denial of the Debtor's discharge." (*Debtor's Br.*, pg. 6).

Page 6
April 20, 2006

stated differently, "bad faith") in filing his or her bankruptcy petition. *Seedling Landscaping & Design, Inc. v. Fryer (In re Fryer)*, 288 B.R. 193, 200 (Bankr. W.D. Pa. 2003). Thus, a Chapter 7 case may be dismissed "for cause" if the debtor fails to demonstrate good faith in the filing of the bankruptcy petition. *Id.* (citing *Tamecki v. Frank (In re Frank)*, 229 F.3d 205, 207 (3d Cir. 2000)). The ultimate burden is on the moving party to demonstrate that cause exists for dismissing a Chapter 7 petition for lack of good faith pursuant to § 707(a). *Turner v. Johnson (In re Johnson)*, 318 B.R. 907, 912 (Bankr. N.D. Ga. 2005). Nonetheless, once a party calls into question a debtor's good faith, the burden shifts to the debtor to prove his or her good faith in the filing of the bankruptcy petition. *Tamecki*, 229 F.3d at 207 (citation omitted).

The dismissal of a petition, particularly for "bad faith" or lack of "good faith," lies within the discretion of the bankruptcy court, and the court must balance the equities and consider the benefits and prejudice of dismissal. *Johnson*, 318 B.R. at 912 (citations omitted). In balancing the equities, the court must decide whether the debtor "has abused the provisions, purpose, or spirit of bankruptcy law." *Tamecki*, 229 F.3d at 207 (citation omitted). The decision to dismiss a bankruptcy petition must be made on a case-by-case basis, dependent upon the particular factual circumstances surrounding the filing of the petition. In determining whether to dismiss a debtor's Chapter 7 petition, the court must also consider the following two principles. First, an application to dismiss a Chapter 7 bankruptcy petition based upon a lack of good faith should be "narrowly construed" and utilized only in "egregious cases." *See Webber v. Giarratano (In re Giarratano)*, 299 B.R. 328, 339 (Bankr. D. Del. 2003) (citing *Tamecki*, 229 F.3d at 207). Second, a motion to dismiss a Chapter 7 debtor's bankruptcy petition should be seldom granted so as to foster one of the primary purposes of the Bankruptcy Code, namely, to "relieve the honest debtor from the weight of oppressive

Page 7
April 20, 2006

indebtedness, and permit him [or her] to start afresh, free from the obligations and responsibilities consequent upon business misfortunes . . . ." *Id.* at 333.

After considering the submissions of the parties, the Court concludes that Scaffidi has not satisfied his burden of demonstrating "cause" to dismiss the Debtor's bankruptcy petition. Stated differently, the Debtor has satisfied her burden of demonstrating that the petition was filed in good faith, and not in an attempt to abuse the purpose, provisions, and spirit of the Bankruptcy Code. Much like all of the allegations raised throughout the parties' moving and opposing papers, the arguments in favor of dismissal and against dismissal boil down to a single "he said, she said." That is, Scaffidi asserts the petition should be dismissed based upon the timing of the filing, while the Debtor essentially contends the filing was necessary to forestall increasing attorneys' fees in litigating the state court action. While the timing of the Debtor's petition causes the Court to have some concern, there is nothing before the Court to suggest that the timing of the filing was for the purpose of obtaining a tactical advantage over Scaffidi or to intentionally divert attention away from the state court litigation.

Moreover, the emphasis of Scaffidi's motion to dismiss inappropriately focuses on the Debtor's alleged improper conduct months or years prior to the filing of her bankruptcy petition. In this Court's view, the critical inquiry is conduct surrounding the filing and the specific justification and triggering event for the filing of the petition, and not on the Debtor's alleged improper activities in the months or even years leading up to the bankruptcy filing. Further, as this Court noted in *In re Walden Ridge Development, LLC*, bankruptcy filings arising out of a two-party dispute or triggered by state court proceedings do not *per se* constitute bad faith filings. 292 B.R. 58, 62 (Bankr. D.N.J. 2003). As evidenced by the Debtor's bankruptcy petition, it

Page 8
April 20, 2006

is not readily clear, as Scaffidi suggests, that the Debtor's bankruptcy filing arises solely out of their two party dispute; indeed, the Debtor lists her unsecured, non-priority debts as amounting to over $130,000, exclusive of any unsecured claim Scaffidi might possess. This Court accepts the Debtor's contention that the petition was filed to provide her with the proverbial "breathing room" from escalating litigation fees which she could no longer afford.

Although not dispositive to the Court's decision to deny Scaffidi's motion to dismiss, another argument raised by the Debtor's counsel during oral argument militates against granting the relief requested by Scaffidi. Simply put, the Debtor's bankruptcy case was filed ten months ago and has progressed to a point where the trustee has expended significant effort in investigating the Debtor's conduct. In fact, Scaffidi contends the trustee is currently contemplating whether to bring a non-dischargeability action against the Debtor, as well as filing several adversary proceedings to recoup property transfers for the benefit of the bankruptcy estate. To dismiss the bankruptcy case at this juncture would prove collectively injurious to the Debtor's creditors and would undermine the role of the trustee to ensure that only worthwhile debtors receive a "fresh start." For all of the above reasons, Scaffidi's motion to dismiss the Debtor's bankruptcy petition is hereby denied.

As previously indicated, in the alternative Scaffidi requests that the automatic stay be vacated so as to enable the parties to continue the trial of the state court action. Section 362(d) of the Bankruptcy Code provides in relevant part as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

Page 9
April 20, 2006

>   (1)     for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

[11 U.S.C. § 362(d) (West 2006)].

The notion of "cause" under § 362(d) is "viewed as a broad and flexible concept." *In re The Score Board, Inc.*, 238 B.R. 585, 593 (D.N.J. 1999) (citation omitted). The court has the flexibility and the discretion to fashion the relief to the circumstances of the particular matter. *Id.* (citations omitted). On a motion to lift or modify the automatic stay, the burden of proof is a shifting one. That is, § 362(d)(1) of the Code requires an initial showing of "cause" by the movant, while § 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property." *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999) (citations omitted). It is well-settled that a basis for granting relief from the automatic stay for "cause" exists when it is necessary to permit litigation to be concluded in another forum, particularly if the non-bankruptcy suit involves multiple non-debtor parties or is ready for trial. *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 130 (Bankr. D.N.J. 2004); *In re Telegroup, Inc.*, 237 B.R. at 87.

The legislative history to section 362(d)(1) supports this conclusion:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.
>
> [S. Rep. No. 95-989 at 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836.]

Page 10
April 20, 2006

In determining whether to grant relief from the automatic stay so as to permit a party in interest to continue prosecuting a matter in another forum, courts will often rely upon the following factors: 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms. *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. at 130 (citing *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 165 (Bankr. D. Conn. 2002)). *See also In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (utilizing same factors). All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay. *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. at 130 (citing *In re Ice Cream Liquidation, Inc.*, 281 B.R. at 165).

Simply put, notions of judicial economy and the fact that the state court action was in the midst of trial when the Debtor filed her petition predominate this Court's decision to lift the automatic stay and permit the parties to proceed in the state court action. Significantly, however, the decision to lift the automatic stay is tempered as follows. First, the automatic stay is lifted so that Scaffidi can pursue his claims against all non-

Page 11
April 20, 2006

debtor defendants in the state court litigation.[4]  Second, the Court shall lift the automatic stay so as to permit the state court action to proceed against the Debtor's insurance carrier with respect to the attorney malpractice claim to the extent Scaffidi seeks to recover under the Debtor's insurance policy.  Third, the automatic stay is *not* lifted as to any of Scaffidi's claims directly against the Debtor.  While the Debtor may be required to participate in the state court action, the Debtor is not required to expend what would otherwise be her personal assets or funds in defending against personal claims or satisfying any adverse judgment.  Transferring the entire state court action to this Court would unquestionably result in wasteful delay and unnecessary expense for all parties, since the litigation against third parties and the insurance policy must, it appears, be tried to conclusion.  Accordingly, Scaffidi's motion to lift the automatic stay pursuant to § 362(d) of the Bankruptcy Code is hereby granted, in part, and the parties are permitted to conclude the state court action with the limitations and parameters set forth above.

For these reasons, the motion to dismiss the Debtor's bankruptcy petition is hereby denied.  However, Scaffidi's request to have the automatic stay lifted so as to enable the parties to complete the trial of the state court action is hereby granted as delineated above.

---

[4] The Court has not entered an Order extending the stay to any third-party, non-debtor defendants in the state court action.  Thus, no automatic stay is in effect as to these defendants.  Nonetheless, counsel for Scaffidi requested that this be included in any opinion simply as a "comfort order."

Page 12
April 20, 2006

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

Very truly yours,

s/ **Donald H. Steckroth**

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure